GANDY BELTING CO. OF BALTIMORE CITY v. VICTOR–BALATA & TEXTILE BELTING CO.

(District Court, E. D. Pennsylvania.   August 3, 1914.)

No. 1007.

1. TRADE-MARKS AND TRADE-NAMES (§ 58*) — INFRINGEMENT — PAINTING PRODUCT.

Where complainant and defendant manufactured canvas belting and complainant adopted as a trade-mark a green line or stripe applied to one edge of the belt, directing in its advertising that consumers should "look for the green edge," such mark, if valid as a trade-mark was not infringed by defendant coloring both edges of its belting a brilliant black.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 100; Dec. Dig. § 58.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 70*)—UNLAWFUL COMPETITION.

Where complainant manufactured and put out canvas belting, one edge of which was painted green as a distinguishing mark, defendant was not guilty of unlawful competition in manufacturing and selling similar belting, both edges of which were painted a brilliant black.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 115; Dec. Dig. § 70.*]

In Equity.   Suit by the Gandy Belting Company against the Victor-Balata & Textile Belting Company, for infringement of an alleged trade-mark and for unlawful competition.   On bill, answer, and proofs. Bill dismissed.

The following are the findings of fact and conclusions of law referred to in the opinion:

### Findings of Fact.

The court in the above case finds the following facts at hearing on bill, answer, and proofs adduced at trial.

(1) The plaintiff is a citizen of the state of Maryland.   The defendant is a citizen of the state of Pennsylvania.   The matter in controversy exceeds in value, exclusive of interest and costs, the sum of $3,000.   One of the questions involved in the case arises under the laws of the United States relating to trade-marks.

(2) So far as they are questions of fact the necessary jurisdictional facts are found to exist.

(3) The plaintiff during the times complained of in the bill and still is, and by itself and its predecessors has continuously been since the year 1880, engaged in the business of manufacturing canvas beltings.

(4) The method of making belts common to the trade is and has been to fold cotton duck into the form of a band.   These folds are then fastened together by a longitudinal stitching and then treated with oil, and the surface of the material is then painted a color resembling leather.   The color is called in the trade "red."   The result of this application of paint is to give the edges of the belting the same color.

(5) On or about December 1, 1910, the plaintiff conceived the idea of giving to its make of belting a distinctive marking which would indicate it at a glance to be manufactured by the plaintiff.   The method adopted was to color one edge of the belting green.   This was to form a contrast with the appearance of other makes of belting, the edges of which were the same color as the face.   In most makes this was a reddish brown.   In some it was yellow, in some black, and in one or more blue.

(6) To secure to itself this distinctive marking as a trade-mark, the plaintiff made application on January 6, 1911, to have registered this trade-mark in

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the office of the Commissioner of Patents. A certificate No. 82069 of this fact was issued to the plaintiff on May 30, 1911. The marking is described in this application as consisting "of a green line or stripe arbitrarily applied to one edge of the belt." The application is accompanied with a drawing which shows the color as applied to one margin of the belting as a band or stripe. The trade-mark is further described as applied "preferably by painting the edge of the belting."

(7) At the time this distinctive marking was adopted by the plaintiff it had in stock and in the hands of its selling agents belting which had not been so marked. The marking was applied to the part of its stock which was still in its factory, and the necessary material was supplied to its agents with instructions to apply the marking to all stock remaining on hand. This was all accomplished by September, 1911, and since that time all of plaintiff's belting has been so marked. The marking has been applied by the belting being put into the form of a roll and one end of the roll painted a green color. This resulted in a continuous green edge on one side of the belting. No other make of belting has been or is so marked.

(8) Before and since the green edge was given to plaintiff's belting its belting was further marked by a representation of a coil or roll of belting bearing the mark on the face of the word "Gandy's," and on the coiled or rolled edge the words "Gandy's Belting" and across this coiled end a further representation of a long bale of cotton marked with the words "American cotton."

(9) After the adoption of the green edge marking the plaintiff entered upon an extended and vigorous campaign of advertising its belting as the belting thus marked. Special emphasis was given to the green color as the special feature of its distinctive marking by the adoption of the "slogan" of "Look for the Green Edge." One point of the success attending this campaign has been that all the selling agents of the plaintiff and others connected with its business are known to the trade as "green-edge" men, and this marking has become identified with the plaintiff's make of belting.

(10) The defendant is likewise a manufacturer of belting of the same general kind and appearance as the make of the plaintiff. Defendant's make of belt was manufactured by the firm of C. Vollrath & Sons, of Blankenburg, Schwartzwald, Germany. This belting had the visual characteristics of the body or faces of the belting, being of this so-called red or leather color and both edges being black. The edges of the belting as manufactured under the process employed by the defendant gets a black color, due to the fact that a black mixture or preparation is worked into the canvas for the purpose of stiffening it and fortifying the edges and improving the quality of the belting in respect to its durability, and giving it also increased traction. After this preparation is applied the body or surface faces of the belting is painted a reddish brown or red leather color, termed in the trade "red." The belting then shows a dirty black appearance of the edges. To improve its appearance by giving it a finish and also for the purpose of a distinguishing mark, the edges are then painted a brilliant black. The defendant has two makes of belting which differ in name at least and perhaps in quality, and are known as "Ampere" and "Victory." Defendant's make of belting is further designated and distinguished by having stenciled in letters, nearly an inch in height, the word "Ampere" or "Victory," according to which make of belting it is. In circularizing the trade, the defendant directs attention to the black-edge marking as a distinguishing feature of this make of belting by which the make may be recognized by the trade.

(11) The distinguishing mark of having both edges of the belting black was not adopted or used by the defendant, nor was the same in use in the United States until after the plaintiff had adopted the one green edge as a trade-mark or distinguishing marking of its make of belt, nor until after the plaintiff had secured a certificate of the registration of such trade-mark in the Patent Office. Whatever prior use was made of the black-edge markings was outside of the United States, and not by the defendant corporation. The use of the belting with these markings in Germany was confined to a firm whose connection with the defendant corporation exists in the fact that the

people, or some of the people, who are connected with the German firm are also individually interested in the defendant corporation.

(12) The adoption of the two black-edge marking of defendant's make of belting was not with the intention to deceive purchasers or to injure the plaintiff or to seek to secure a trade by the belting of the defendant's make being mistaken for the belting of the plaintiff's make, nor is there such an identity or similarity in the appearance presented by the two makes of belting having these respective markings so as in fact to cause a deception or for the one to be mistaken for the other.

(13) So far as the finding is one of fact it is found that the defendant has not been guilty of unfair competition in marking its make of belting with both edges black, nor in any other of its acts.

(14) So far as the finding is one of fact the defendant has not infringed upon the trade-mark of the plaintiff, nor has it reproduced, counterfeited, copied, or colorably imitated in any way defendant's registered trade-mark, or affixed the same to merchandise of substantially the same descriptive properties as those set forth in the registration.

### Conclusions of Law.

The court finds the following conclusions of law:

1. So far as the same is a legal conclusion the court finds the defendant to have been guilty of no unfair competition with the plaintiff in the manufacture or sale of the canvas belting in the business of manufacturing and selling of which the plaintiff is and has been engaged.

2. So far as it is a legal conclusion the court finds that the defendant has not infringed upon the registered trade-mark of the plaintiff referred to in the bill filed.

3. The question of the validity of the trade-mark registered by the plaintiff not being necessary to a decision of the cause under the view taken by the court, no finding in this respect is made.

4. The defendant is entitled to a decree that the bill of the plaintiff be dismissed.

5. The defendant is entitled to a decree for the allowance to it of costs.

Cyrus N. Anderson, of Philadelphia, Pa., James L. Steuart, of Baltimore, Md., and John E. Cross, of New York City, for plaintiff.

Andrew Wright Crawford, of Philadelphia, Pa., and Wm. B. Whitney and Crane & Lockwood, all of New York City, for defendant.

DICKINSON, District Judge. Specific findings of facts and conclusions of law, so far as are necessary to the ruling of the case now made, are filed herewith.

It is not altogether easy to find a phrase which will accurately present the precise points involved in a decision of this case. The facts themselves may be soon stated, and are not in serious dispute. The general questions involved relate to charges of unfair competition and infringement of a proprietary trade-mark.

The plaintiff and defendant each is a manufacturer of canvas belting as a substitute for leather. The methods of manufacture in use by all such makers are, generally speaking, the same. Cotton duck is folded in such manner as to make a strip of the required width and thickness. It is then stitched together longitudinally so as to make a band, whose ends may be fastened together to form a belt. The material is treated with oil, and then painted on the surface sides of the canvas strips. The practical result is that the edges also are colored with the paint. This treatment is functional; acting as a preservative

and also increasing the traction by imparting to the belt when in use what is termed increased "hug." One or more makers paint their belts black. Individual makers paint their different make of belts yellow and blue, but the general practice is to paint them what is called "red." The color is not a real red, but what may be termed a conventional red. It is red only in the sense in which dealers in leather distinguish it as red leather and black leather. No claim is made that this color is functional. Its use is accounted for by the statement that this "red" paint is as good as any, and is preferred for economical reasons. The real origin of its use and the original motive for its use is doubtless to be found in the fact that as the canvas belting was brought upon the market as a substitute for leather, its introduction was thought to be made easier by giving it something of the general appearance of leather. It is a further common practice among all makers to stencil upon the surface of the belting, at varying intervals of space, something to indicate the special make. The plaintiff used at first a representation of a coil of belting, laid across which was an elongated bale' of cotton. On the coiled edge side of this illustration was stenciled the words "Gandy's Belting," and on the surface side the word "Gandy's" and on the cotton bale the words "American Cotton." The belting was sold by the foot, and if it happened to be cut in short lengths between these markings, the piece of belt thus cut would contain nothing to show the make. About December 1, 1910, the plaintiff conceived the idea of indicating its make of belt by a distinctive marking, consisting of the giving of a green color to the continuous edge of the belting on one side, which would sharply contrast with the surface color of the belt. The belt would thus show the make, however short, the lengths into which the belting was cut. On January 6, 1911, application was made to the Patent Office to have this designation registered as a trade-mark. Following this, arrangments were made and carried out to have all the belting then in stock in its own plant and in the hands of its agents bear this distinctive marking. By September, 1911, this had been accomplished. The plaintiff then began a vigorous campaign of advertising to associate in the minds of buyers this marking with the plaintiff's make of belts. It circularized the trade by means of pamphlets which emphasized this color scheme by showing coils of belting, the surface of which appeared as a bright red in striking contrast with the green edge. This was the banner carried by plaintiff's army of "rooters," who were also given as their battle cry the "slogan" of "Look for the Green Edge," with marked and special emphasis on the "green." The wits in the trade contributed to the success which attended this campaign by personifying this "slogan" and attaching it to the plaintiff's salesmen. They were spoken of as "green-edge men," and play upon the words was made in various other forms.

[1] As in the making of this belting in the usual way, the belting is painted, and as this painting involves the edge and colors it, no claim of a property right or trade-mark in a colored edge could successfully be set up for any one maker. In order to present the claims of the plaintiff in their clearest light let us ignore this fact, and assume that the plaintiff could have acquired this right. It might then

have made its claim to broadly cover simply a colored edge or an edge colored differently from the surface of the belt, or it might have limited its claim to an edge carrying a special color confined to one edge or embracing both edges. It chose to accentuate and emphasize its marking by limiting it to one edge and one color. There is something of an ambiguity in what it did do in one respect. It applied for a trade-mark to consist "of a green line or stripe applied to one edge of the belt." The accompanying drawing, consistently with this description, shows a border or stripe of color on the face of the belting. The coloring of merely the edge, which was in fact all the plaintiff did, scarcely fulfills this description. It is true the application incorporates the statement that "the trade-mark is applied or affixed to the goods preferably by painting the edge of the belting," but strictly this would be referable to the mode of bringing the trade-mark into visual existence not to an altered description of what it consisted.

Waiving the question of the validity of this trade-mark, and conceding it to give a proprietary right to a green color applied to one edge of the belting, the plaintiff complains of the defendant, not in that it has put one green edge on its belting, but in that it has colored both edges "a brilliant black." This brings the plaintiff up against this dilemma. It must either admit that making the two edges black is not an infringement of a one green-edge trade-mark, or it must claim this trade-mark to cover any colored, or at least black-colored, edges, thus giving it the same protection under its limited trade-mark it would have had under one in its broadest form. A claim that the coloring of both edges of a belt black is an infringement of a trademark which consists of "a green line or stripe," or, as the drawing shows, a band or border of green, cannot be sustained unless there is such a resemblance as to be deceptive in fact. A claim of monopoly of right, either at common law or under the trade-mark statutes, in the privilege or practice of making the edges of the belting of any color is certainly too broad.

[2] This, therefore, leaves in the plaintiff's bill only the complaint that the defendant has colored the edges of its belting black so as to facilitate the imposition of its make of belt upon intending purchasers as the make of the plaintiff. This is the complaint the plaintiff really does make, and resolves the case so far as it depends upon its facts to a case of unfair competition. Generally speaking, the acts which come within the ban of the law under this head consist of things done which are to result in the palming off of the goods of one person for the goods of another. An illustration to express this thought has been suggested which is something like this: One man sets up a wireless apparatus to serve as a receiving station. This he does by manufacturing or securing a certain kind or make of goods for which he expects, or at least hopes, to be able to create a demand. He then sets up other wireless apparatus constituting as many sending stations as possible for the use of his customers, and provides them with a code of calling signals. This he does by advertising and educating intending purchasers among the buying public in every way possible to prefer and ask for his product. After he has done all this and the messages begin to fly thick and fast, another sets up a receiving station

attuned to receive the messages intended for the first man and intercepts the messages. This the law condemns as unfair competition and prohibits it. Has the defendant been thus guilty? Against it is the fact that it is the only competitor in the trade of whom the plaintiff complains. On the other hand, this make of belting had been so marked in Germany, and is the only make which is treated with a solution before painting it. This treatment is functional. An incidental consequence or result is that the solution by capillary attraction is drawn into the material and the edges are stained a dirty black color. To improve the appearance of the belting and to distinguish the defendant's make both edges are painted a "brilliant black." Is this done for the purpose and does it have the effect of bringing about any confusion in the two products of manufacture, or aid in diverting to the defendant any trade which of right belongs to the plaintiff? This we cannot find. The effort of the plaintiff to show that the alleged functional use of the discoloring solution was a pretense by showing that the edge was wholly colored after the paint had been applied to the face of the belting, and not before, as averred by the defendant, failed. Moreover, there is no confusing resemblance. A short piece of the belting shows something of a resemblance, but it is to be kept in mind that the belting is inspected and usually sold in rolls of some size, and this brings out in bold relief the green edge feature of the plaintiff's make of belting. It is only in certain lights that the difference would not be marked and striking. Moreover, unless all the plaintiff's efforts have gone for nought, its customers look for and are guided in their purchases by the green edge. We cannot find, therefore, either a purpose to deceive or a misleading similarity of appearance in fact. The strongest appeal on behalf of the plaintiff for relief lies in the fact that white or red edges would make the difference between the defendant's and the plaintiff's goods more marked and the right of the defendant to freedom from interference on the part of the court much more clear. To restrain the defendant from the use of the black edges, however, involves a finding of its guilt, and could not but operate as a disturbing factor in its dealing with its customers. We cannot lose sight of the probability that the awarding of an injunction would be used (of which indeed there is already evidence) as a weapon of advertising warfare against the defendant which would work an injury to it.

As we are constrained to find against the plaintiff the fact of unfair competition and infringement of its trade-mark, the question of the validity of such trade-mark and plaintiff's proprietary right in the use of the green edge need not be inquired into.

The bill of the plaintiff is therefore dismissed, with costs to the defendant. Counsel may submit a form of decree in accordance with this opinion for approval.